UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

GARRETT LEE ZYLEMA,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

                                  /

Case No. 1:14-CV-1329

HON. GORDON J. QUIST

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Garrett Zylema seeks review of the Commissioner's decision finding Plaintiff was not disabled prior to May 9, 2013. This date was one day before Plaintiff's 50th birthday, and the occasion under social security regulations when his age classification changed from a younger individual to an individual "closely approaching advanced age." 20 C.F.R. § 404.1563(c).

### STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The

Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 50 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 9, 128.) He obtained a GED, and was previously employed as a construction painter, mobile home repairer, cabinet maker, cleaner, and groundskeeper. (Tr. 37, 57–59.) Plaintiff applied for benefits on July 31, 2012, alleging that he had been disabled since May 31, 2009, due to

ankylosing spondylitis, degenerative disc disease, and reactive depression. (Tr. 128, 182–83.) Plaintiff's application was denied on October 1, 2012, after which time he requested a hearing before an ALJ. (Tr. 137–41, 144–45.) On July 18, 2013, Plaintiff appeared with his counsel before ALJ Michael Condon for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 28–66.) In a written decision dated August 9, 2013, the ALJ determined that Plaintiff was not disabled prior to May 9, 2013, but became disabled on that date and remained so through the date of the decision. (Tr. 9–27.) On October 31, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (Tr. 1–6.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Condon determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date.[2] (Tr. 16.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) ankylosing spondylitis with cervical spondylosis; (2) lumbar degenerative disc disease at L5-S1; (3) bridging osteophytes; (4) sacroiliac joint degeneration; and (5) hip pain. (Tr. 16.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 18.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a), . . . lifting 10 pounds occasionally and less than 10 pounds frequently; standing and walking 2 hours and sitting 6 hours in an eight hour workday; occasional climbing ramps and stairs; never climbing ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; he should avoid concentrated exposure to extreme heat and humidity; and he should avoid all exposure to hazards.

---

[2] Though Plaintiff alleged a disability onset date of May 31, 2009, the ALJ noted that Plaintiff had previously filed an application for benefits, and at the time of the decision, was appealing the prior decision in the federal courts. Following Department of Health & Human Services rulings, the ALJ noted that the relevant time period for considering Plaintiff's application, therefore, was from June 28, 2011, through August 9, 2013, (the date of the decision). (Tr. 13)

4

(Tr. 18.) Continuing with the fourth step, the ALJ also determined that Plaintiff was unable to perform any past relevant work. (Tr. 22.)

At the fifth step, the ALJ was required to consider factors including age, education, past work experience, and RFC to determine whether Plaintiff was capable of performing other jobs. Typically this involves consulting the Medical-Vocational Guidelines ("Grids") to determine whether Plaintiff is disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00. Prior to May 9, 2013, the Grids directed a finding that Plaintiff was not disabled. Because Plaintiff was found not capable of a full-range of sedentary work, however, the ALJ reached his conclusion of disability with the use of the VE testimony, using the Grids only as a framework. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008). At the hearing, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the positions of final assembler, machine tender, and inspector as jobs Plaintiff could perform. (Tr. 60–61.) The VE further testified that these jobs amounted to 11,500 positions in the state of Michigan. (Tr. 56, 60–61.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988). As such, the sequential direction directed a finding that Plaintiff was not disabled prior to May 9, 2013.

However, the ALJ noted that within the relevant time period, Plaintiff reached the age of fifty, and thus his age category shifted into that of a person closely approaching advanced age. (Tr. 23–24 (citing 20 C.F.R. § 1563(d).)) Under this new age category, the Grids directed a finding that Plaintiff was disabled. (Tr. 24 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 §201.14.)) Accordingly, the ALJ determined that Plaintiff was not under a disability prior to May 9, 2013, but became disabled on that date and remained so through August 9, 2013 (the date of decision). (Tr. 24.)

5

# DISCUSSION

Plaintiff's Statement of Errors contains the following issues for review:

1. The ALJ committed reversible error by not properly considering the opinion of the treating specialist who had treated Plaintiff for years and by instead relying upon the opinions of non-examining physicians;

2. The ALJ committed reversible error by failing to find that Plaintiff met Listing 14.09; and

3. The ALJ committed reversible error by wrongly discrediting the statements and evidence from Plaintiff and his wife.

(ECF No. 13, PageID.352.) The Court will discuss the issues below.[3]

### 1. The ALJ Did Not Err In Evaluating Whether Plaintiff Met or Equaled a Listing.

On July 16, 2013, in response to questions submitted by Plaintiff's counsel, Dr. Richard Martin opined that Plaintiff met the requirements of Listing 14.09(D). Specifically, Dr. Martin opined that Plaintiff experienced repeated manifestations of inflammatory arthritis along with severe fatigue and malaise, and was markedly limited in his activities of daily living, maintaining social functioning, and in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. (Tr. 299.) Dr. Martin concluded that Plaintiff "really has [Ankylosing Spondylitis] that severely limits all aspects of life. He has a good attitude [and] tries, but really is incapable of gainful work. He is much more impaired than my other RA patients." (Tr. 299.) Plaintiff claims that he meets the requirements of Listing 14.09(D), that the ALJ failed to provide "good reasons" for giving Dr. Martin's opinion less than controlling weight under the treating physician doctrine, that the ALJ was required to give more weight to Dr. Martin's opinion due to

---

[3]The Court notes that a large portion of the Statement of Facts in Plaintiff's brief cites to the Administrative Proceedings Transcript of Plaintiff's prior application. (ECF No. 13, PageID.338–345; *see also Zylema v. Comm'r of Soc. Sec.* No 12-CV-170 (W.D. Mich. filed June 6, 2012).) Plaintiff claims the these records "obviously should have been part of the Record." (ECF No. 13, PageID.338.) Plaintiff has not asked that the transcript from the prior case be made available in this case, however, nor cited any authority requiring that it be admitted. It is Plaintiff's responsibility to show the error. *Glazer v. Comm'r of Soc. Sec.*, 92 F. App'x 312, 315 (6th Cir. 2004).

his specialization as a rheumatologist, and finally that the ALJ was required to give the opinion more weight than the opinions of non-examining agency reviewers. The Court disagrees.

Plaintiff first contends that he meets the requirements of Listing 14.09(D) and should have been found disabled at step three of the sequential evaluation. A claimant bears the burden of demonstrating that he meets or equals a listed impairment at the third step of the sequential evaluation. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id.* An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. §§ 404.1525(d). A claimant does not satisfy a particular listing unless all of the requirements of the listing are present. *See Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987); *see, e.g., Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004) ("[w]hen a claimant alleges that he meets or equals a listed impairment, he must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency"). If a claimant successfully carries this burden, the Commissioner will find the claimant disabled without considering the claimant's age, education and work experience. 20 C.F.R. § 404.1520(d).

Listing 14.09 provides in pertinent part as follows:

> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary eight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.

> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09(D). The regulations define "marked" as meaning "more than moderate but less than extreme" and that a claimant "need not be totally precluded from performing an activity to have a marked limitation, as long as the degree of limitation seriously interferes with [the claimant's] ability to function independently, appropriately, and effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.00(I)(5). In evaluating this alleged impairment, the ALJ rejected the conclusions reached by Dr. Martin who, as noted above, determined that Plaintiff met the requirements of this listing:

> [T]he evidentiary record does not support the contention that the claimant meets the criteria of listing 14.09D. Regarding activities of daily living, the claimant reported that he could perform personal care, though he sometimes had some difficulty, prepare simple meals, perform some housework, and drive. While the claimant has some limitation in performing activities of daily living, the evidence does not demonstrate that it seriously interfered with his ability to function independently. As for social functioning, Dr. Martin noted on April 23, 2013, that the claimant maintained social contact outside the house. Finally, the claimant did not allege any limitations in concentration, persistence or pace, and he reported driving and watching television. Dr. Martin's treatment records do not indicate that the claimant's impairments cause the necessary degree of limitation to meet or equal listing 14.09D. Accordingly, Dr. Martin's evaluation is given little weight.

(Tr. 18) (citations omitted.) The ALJ also discussed Dr. Martin's opinion at step four of the sequential evaluation, and concluded that Dr. Martin's opinion that Plaintiff was further impaired than that recognized in the RFC was entitled to little weight:

> [Dr. Martin's] conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques, nor consistent with the other substantial evidence in the case record. While claimant undoubtedly has functional limitations associated with his physical impairments, the weight of the evidence of record does not establish the claimant is currently unable to perform the

8

> reduced range of sedentary exertion work described above. The undersigned recognizes that ankylosing spondylitis can cause significant functional limitations; however, the current record indicates the claimant is doing rather well, despite his diagnosis. Dr. Martin's treatment records indicate improvement in the claimant's condition with appropriate treatment. Moreover, claimant's Function Reports indicate that he was able to perform personal care, with only some difficulty with shoes and socks. He reported he was able to prepare simple meals, do some housework, spend time with others, and follow directions (Exhibits B4E and B11E). Dr. Martin is clearly overstating the claimant's current functional limitations. As a result, the opinion of Dr. Martin is given little weight.

(Tr. 22.)

Plaintiff argues that, as a treating physician, the ALJ erred by failing to give this opinion controlling weight. It appears undisputed that Dr. Martin qualifies as a treating physician. The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating physician if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Plaintiff testified he was able to put on his socks by himself, and sometimes used a device to help him do so. (Tr. 48–49.) He further testified that he thought he could walk a couple of miles, though he later stated that he would need to take breaks while doing so. (Tr. 52, 54.) Plaintiff also stated he was able to do dishes and light cleaning. (Tr. 223.) He reported he was able to prepare meals and drive a car. (Tr. 224–25.) Dr. Martin also noted that, though depressed, Plaintiff was able to maintain social contacts. (Tr. 290.) Plaintiff reported that he visited with his grandchildren, and had no problems getting along with family, friends, and neighbors. (Tr. 259–60.) He checks in regularly with family and friends on Facebook. (Tr. 53.) When the ALJ observed that Plaintiff did not appear to have a lot of mental or emotional issues, Plaintiff agreed. (Tr. 54.) Further, Plaintiff said he could "finish what he started" on things such as reading a book or watching a television program. (Tr. 260.)

The ALJ also noted that Dr. Martin's treatment notes do not support his opinion that Plaintiff was as limited as he stated. On several occasions Plaintiff was able to get up from a chair

and climb onto an examination table without assistance. (Tr. 267, 272, 290.) Similarly, treatment notes document that Plaintiff reported he did not experience issues with fatigue. (Tr. 266, 270, 288.) After receiving injections, Dr. Martin reported "substantial improvement" regarding Plaintiff's knee and wrist pain. (Tr. 290.) As the ALJ correctly found, such notes are inconsistent with the doctor's later opinions.

All this provides substantial evidence that Plaintiff was not so limited that his impairments seriously interfered with his ability to function independently. Contrary to Plaintiff's argument, it was not error for the ALJ to cite Plaintiff's activities of daily living as a reason for discounting Dr. Martin's opinion especially where, as here, Plaintiff's ability to perform such activities are directly at issue. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (claimant's daily activities were a good reason for discounting the treating physician's opinion). In sum, the ALJ provided good reasons, supported by substantial evidence, for giving little weight to Dr. Martin's opinion. For the same reasons, Plaintiff's argument that he meets the requirements of Listing 14.09(D) also fails.

>    A.   The ALJ was not Required to Give More Weight to Dr. Martin's
>         Opinion Because Dr. Martin was a Rheumatologist.

Plaintiff presents a separate argument that the ALJ was required to give more weight to Dr. Martin's opinion than the other medical opinions in the record because Dr. Martin was a specialist in rheumatology. (ECF No. 13, PageID.355.) The Court is not persuaded.

If, as here, the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of

11

the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir., Jan. 19, 2007). Thus the specialization of the physician offering an opinion is only one of several opinions to be weighed by the ALJ. The ALJ began his discussion of the medical record by noting his obligation to consider the evidence in accordance with, among other things, the factors listed above in 20 C.F.R. § 404.1527. (Tr. 19.) The record further shows that the ALJ explicitly discussed several of the above factors including: Dr. Martin's specialization as a rheumatologist, the frequency of examinations,[4] and the consistency of the opinion with the record as a whole. (Tr. 20–22.) Regardless of the other factors which the regulation required the ALJ to consider, the evidence and opinions mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Martin's opinion little weight.

> B. *The ALJ was not Required to Give More Weight to the Opinions of Examining Physicians Than Those of Non-Examining Physicians.*

Plaintiff finally claims that the ALJ should have given more weight to the opinion of Dr. Martin than the opinions of Dr. Larry Jackson and Dr. Charles Lee, who are state agency consultants, and provided their own opinions regarding Plaintiff's RFC. Plaintiff argues the ALJ erred in giving more weight to these opinions because Dr. Martin examined Plaintiff and the consultants only reviewed the record. (Tr. 134, 287.) It is true that "as a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source

---

[4]It appears that the ALJ noted the frequency of Plaintiff's examinations in his discussion of the medical record and Plaintiff's credibility, and not specifically as part of his decision to give less weight to Dr. Martin's opinion. (Tr. 21). In any event, as noted, the frequency of treatments is a relevant factor for ALJs to consider in determining what weight to assign medical opinions. Accordingly, Plaintiff's argument that it was error for the ALJ to consider the length between his treatments with Dr. Martin fails.

who has not performed an examination (a 'nonexamining source')." *Gayheart*, 710 F.3d at 375. However, this is not a rigid rule. Instead, "[a]ny record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). As noted above, the ALJ made such a determination here. The ALJ also did not err in giving "great weight" to the opinions of Drs. Jackson and Lee. (Tr. 21.) An ALJ may rely on the opinions of the state agency physicians who reviewed Plaintiff's file. *See* 20 C.F.R. § 404.1527(e)(2) (I) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). The Court finds no error, and thus Plaintiff's argument is rejected.

   **2.** **The ALJ Did Not Err in Rejecting the Opinion of Plaintiff's Wife and Plaintiff's Subjective Allegations.**

In support of his application for benefits, Plaintiff submitted a statement authored by his wife in which she asserts that Plaintiff is far more limited than the ALJ concluded. (Tr. 210–217.) Plaintiff also provided a similar statement. (Tr. 255–62.) Plaintiff argues that the ALJ improperly discredited these statements. (ECF No. 13, PageID.355–56.) The Court is not convinced.

Opinions expressed by non-treating sources such as a claimant's spouse are not entitled to any deference and the ALJ is not required to articulate good reasons for discounting such. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 481 F.3d 873, 876 (6th Cir. 2007). The ALJ is simply required to consider such opinions and accord such the weight he finds appropriate. *See, e.g.*, *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014). The ALJ considered the opinion of Plaintiff's spouse and afforded little weight for reasons supported by the record. (Tr.

22.) Contrary to Plaintiff's assertion, it was not error for the ALJ to consider the financial interest that Plaintiff's wife would have in an award of benefits. *Hyson v. Comm'r of Soc. Sec.*, No. 5:12CV1831, 2013 WL 2456378, at *20 (N.D. Ohio June 5, 2013). Accordingly, this argument is rejected.

Plaintiff relatedly argues that the ALJ improperly discredited his own subjective statements, claiming that he is in fact more limited than that recognized by the ALJ. As summarized by the ALJ, Plaintiff testified that:

> he cannot work because of ankylosing spondylitis, degenerative disc disease, and reactive depression. He described having neck pain, making it difficult to turn his neck. He mentioned that he can sit for 1 hour, lift 5 to 10 pounds, stand for 1 hour, and walk for at least 1 mile. The claimant said that he used a cane to assist with ambulation, especially during changes in weather. He stated that he has difficulty squatting, climbing stairs, balancing, getting out of a chair, bending, climbing ladders, kneeling, and reaching.

(Tr. 19.) Plaintiff argues the ALJ's RFC determination should have adopted these statements.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ discredited Plaintiff's statements because they were unsupported by the record. For example, the ALJ noted Plaintiff was diagnosed with depression, but was not prescribed any medication, nor did Plaintiff attend therapy. (Tr. 16, 53, 272.) Treatment records show Plaintiff was able to get up from a chair without assistance. (Tr. 267, 272, 290.) Plaintiff denied problems with his shoulders, elbows, hands, ankles, and feet, and was able to complete a variety of daily activities. (Tr. 255–62, 288.). All this provides substantial evidence for discrediting Plaintiff's subjective statements, and accordingly, Plaintiff's claim of error is denied.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated: March 3, 2016                                /s/ Gordon J. Quist
                                            GORDON J. QUIST
                                            UNITED STATES DISTRICT JUDGE